First case this afternoon is World Painting Company, LLC v. Joseph Costigan, et al. That's case number 411-0869. For the appellant, Mary Welsh. For the appellee, Timothy Teague. I apologize. You may proceed. Good afternoon, Your Honors. May it please the Court, I'm Mary Welsh. I'm here on behalf of Defendant Costigan and the Attorney General. The question in this case is whether the plaintiff has made... You'll have to speak up just a little bit. Sorry. The question in this case is whether the plaintiff made in the circuit court a sufficient showing for a preliminary injunction. And the answer to that question is no. In the appellee's brief, they agree, in fact, that the Department's construction of the Act is both reasonable and constitutional, so there's no likelihood that they could prevail on the merits since courts are required to construe a statute constitutionally if possible. And in addition, a plaintiff made no showing, unlike in Bartlow, no factual showing either in the complaint with well-pleaded facts or with affidavits that World Painting satisfied the other criteria for a preliminary injunction. Now, I think it's very important to remind this Court, if the Court's familiar with the Wage Act from Miller and Ruckey and other cases, and I'd like to just go briefly through how the Act works because it's very important to understand that the Act does not create an administrative procedure that the Court is familiar with from other agencies where there's a final administrative adjudicative decision where it finds facts and it makes determinations of liability that are then reviewed under the administrative review law. This isn't an agency like that. The General Assembly authorized the Department to act only in an investigatory capacity. So what it does is it receives a complaint or it hears that it should investigate circumstances that lead it to believe that a contractor is classifying what are really employees, people that they control under those other criteria that the Act has. And if they're misclassifying them as contractors, independent contractors rather than employees, then that means that these individuals don't get the benefit of wage laws, overtime, employment discrimination laws, everything else. They're really not protected as employees normally are. So then what happens is that the first step of the Department's investigation is that they look into it and they do what they did here. There's a preliminary investigation notice. And really it's preliminary. And I want to emphasize this. Again, the Department is acting only in an investigatory capacity. So it investigates. It might find, as it did here, that there are individuals who are really employees who the employer is controlling or is satisfying of the other criteria and it wants more information. So it invites the contractor to give more information. And the contractor may do this or may not as the plaintiff declined to give any more information. So that's step one. And then in step two what happens also is that there can be a conference where there's an exchange of information and so on about whether or not these individuals are employees or in fact independent contractors. And then if the Department finds after further investigation it sends another notice. And it again... Let me start there. What kind of a conference? Who is there? What's involved? Anybody. There can be written submissions. There can be oral submissions. It's not an evidentiary hearing. It's familiar also... The Court's familiar, I imagine, with how the Human Rights Department acts. You know, it finds that there's... It only acts in an investigatory capacity. And it finds that there's... Or doesn't find that there's substantial evidence. Again, this is really just like the Wage Act in Reiki. This Court's decisions in Reiki and Miller. It's really the Department acts in an investigatory capacity and keeps, you know, trying to pull in more and more information, you know, for an end result to determine if it's going to take any action. So this is the second step. So first there's the investigation and the preliminary investigation findings. Then there can be a conference and so on. And then if the Department finds at that point, then it issues another notice. And it, you know, it asks... It says, you know, there can be a private civil action. You should be aware of this. And so what it does is then the party can ask by request to submit more, yet more information. And again, the plaintiff didn't, you know, didn't avail itself of this. And then the Director with the General Counsel comes to a conclusion. And it asks for... And then the Department can issue a cease and desist order then. It can assess penalties and so on. But there has to be voluntary compliance. And this is really important. If there's voluntary compliance, then of course everything goes away. If there isn't voluntary compliance, and this is again under, you know, 240.150 in the Administrative Code, if there isn't voluntary compliance with any of the Department's orders, then, and only then, does it refer an action to the Attorney General's Office for an enforcement action. And also, and the important thing to remember here is that the Department's findings, investigative findings, because they are not adjudicative findings, are not, you know, have no preclusive effect at this court hearing. So it's not like an administrative review action where the Department, where an agency has found facts, has adjudicated liability, and then all that has to happen, what happens next, is that the subject of a Department finding then seeks review. So let me see if I understand. It seems like the plaintiff here is saying, your position is that this investigation essentially means nothing, it can go nowhere if they disagree with it, and that you, everything is de novo thereafter? Is that what your position is? If you have to wind up a referral to the Attorney General's Office for Enforcement in Circuit Court? Correct, that's correct. And that's what this court found with regard to the Wage Act in Wacky, that the, you know, this was in a separate civil action. So if, let's assume that the response of World Painting Company is, we've done nothing wrong, period. We have nothing to say. Then what happens? Then the Department goes to the Attorney General's Office and says, we've made these findings, we think there's enough evidence here to go forward with an enforcement action. Assuming the Attorney General agrees, then they file, the Attorney General files a complaint in Circuit Court? Correct. As the plaintiff? As the plaintiff. Again, so this is quite different. And what about anything that's happened to that point, is admissible or noted judicially or otherwise, will come before the trial judge here in Salem County, if let's assume that's where this is brought? Right. Well, what happens is, of course, the information that the Department has, you know, gathered, becomes evidence or it becomes things that they want to submit. They say, we investigated. Well, the noble proceeding means you're going to call your first witness counsel, you have to call everybody. Right, and so you have to start, right. What part of this investigation is just automatically to be considered by the court? Anything? No. No, I mean, it's not as though they, and this is what happened in Recce, remember, that what happened there is the plaintiff, it was a private plaintiff, said, look, the Department made these investigative findings. I've satisfied my burden of proof. And this court said, no, you didn't. You have a burden of proof. These are not preclusive as to liability. So what happens is that there has to be a presentation of evidence, admissible evidence, you know, for a court to determine whether there's liability. Again, it's completely different from the normal agency acting as a tribunal to adjudicate rights, liabilities, facts, and so on. But you cite, if I understand correctly, Section 80 of the Act supporting this. That says, any finding made pursuant to this Act is for the purpose of enforcing this Act and may not be admissible or binding against the party in any other proceeding. That doesn't sound to me like it says anything at all, like you've just suggested. Well, the findings aren't admissible, but certainly the evidence that underlies those findings. The findings don't have any preclusive effect. This court has already decided that in Recce, right, with regard to the Wage Act, and this Act, the Employee Classification Act, has a similar statutory scheme. So the findings don't have preclusive effect. The Department's conclusions don't have. The Bartlow court disagreed with that, that they met. Well, the Bartlow court, with all due respect, the Bartlow court did not understand how the statute works. I mean, the Bartlow court didn't understand, and I just re-read it this morning, didn't note that there can be voluntary compliance, and only if there's no voluntary compliance is there a referral for enforcement of what the Department is seeking in terms of penalties, including to enforce a cease and desist order, and so on. You're the same counsel, Mark, aren't you? I am. Much of your brief seems to be talking about how that court was wrong. Well, yes, it was. Do we have to agree with that assessment in order to agree with your position before us? Well, if, you know, Bartlow decided that there was a, because the question was on a TRO, Bartlow decided that there was a fair question about whether the Department could find facts and impose liability. Of course, the mom and pop roofing company in Bartlow got a letter saying, by the way, you might owe us $1.6 million. I can see where they'd be a little upset. Right. But this was just all by purposes of a discussion? It didn't mean anything? Right. Again, that was the first. Well, actually, in Bartlow, they had gone a little farther than here. The investigation had gone farther. But, again, these letters are to encourage, really, I mean the point of these letters, as the General Assembly's intent, is to try to do a relatively quick investigation, not the drawn out normal administrative agency process. So the plaintiffs in Bartlow are just, they shouldn't have been nearly as upset about that $1.6 million that they were told it might be assessed? Well, they said it might. But, yes, I think they should not have been that upset. Because what the letter says, the letter's very clear. It says, you may be assessed this. We've made these preliminary determinations. You may be assessed this. But, in fact, you know, as, you know, the Illinois Supreme Court has said, when you get a notice of an investigative finding like this, in National Marine, what you do is you can ignore it. And that's, you know, and that's what some people do. And so then, therefore, there are some enforcement actions. But, you know, but also there's the opportunity to short circuit that, you know, expanded system, enforcement system, and come to some resolution beforehand, a settlement. This is kind of a peculiar case. I'm trying to get a handle on the procedure of it. I note that the plaintiffs, in their brief, cite the East St. Louis case. Right. And say that the department apparently doesn't like this decision, has chosen not to cite it, and has apparently not relied on it for any purpose. Is that a correct assessment? Yes, that is. That is. Because that, again, you know, the East St. Louis case came up. That's what the Bartlow trial court, which has entered judgment for the department, remember, and it's on appeal now as well in the 5th District, that decision. What decision? The judgment for the department has been appealed. In Bartlow 2? In Bartlow 2, exactly. Okay. Exactly. By the way, you cite that to us. Is there any particular weight that we're supposed to give to the Franklin County Circuit Court's assessment of what Bartlow is all about? Well, it's certainly, it's one, well, there are a couple of answers to that question. One is that the circuit court, like every court, came up with a constitutional construction of the act, which Bartlow court did not. The Bartlow court was offered by us, by the department, a reasonable constitutional construction of the act, which plaintiff has admitted in the appellee brief is a reasonable constitutional construction of the act. And yet, the Bartlow court did not, you know, chose to ignore, you know, to reject that reasonable constitutional construction and come up with what we believe is an unreasonable and definitely unconstitutional construction of the act. So, you know, when you can choose between two reasonable, plausible constructions of a statute, a court is obliged to choose the constitutional one. And for reasons I don't quite understand, the Bartlow court made the wrong choice in that regard. You cite the Recce case to us, you've done it a couple of times, but that wasn't concerning this act. Yeah, that was concerning the wage act. So you're arguing that there's a comparison. Right, right, right. The statutory scheme, it's the same department, and the statutory scheme is similar in that there's an investigation, you know, that courts have recognized this, both this court and the first district in several cases, Walters and so on, Schwenke, you know, have recognized that all the department does is investigate. It doesn't adjudicate. And that's the, if there's one message I want to get across today, that's the message I want to get across. So any hearings, there's no concern about any of this because none of it matters? Well, because none of it has preclusive effect, and none of it is self-enforcing. Remember, you know, you don't go. Well, how about my term? Does any of it matter? Well. Will it have any effect at all when the case comes to circuit court, what happened with your department? What happened? No, the findings? The investigative findings? No. Is there anything about what your department does before the case comes and before Judge Turner at the Selman County Circuit Court for enforcement? Is there anything about this that could in any way have an impact or affect the plaintiff's rights? No. No. There's no legal effect to the department's investigation findings, and that's why, again, that's why there are two consequences to that. One is because there's no legal effect, there's no deprivation, so there can be no due process claim. And the second thing is because there's no legal effect, it's premature. So your position is on the question of what processes do, given that this is just an investigatory situation, there's nothing? There's no process, right, because process, remember, process is required for deprivations of protected interests. And if you have no deprivation, you don't need process. So is it like this is a police investigation subject to reference to the state's attorney who then brings charges? Precisely, I believe. Is Bartlow the only case out there at the moment? I think the act was enacted January 1, 2008, wasn't it? I believe so. So it's been just now four years. Bartlow is the only case that has to date interpreted it? Yes. And in your judgment, they got it wrong? Yes. And, again, only in the real context. I understand you say in responding to Justice Steinmet that you don't think East St. Louis Federation of Teachers supports the department's decision? Well, you know, East St. Louis, that was what the Bartlow trial court relied on in giving judgment, in awarding judgment to the department. And what East St. Louis stands for, the proposition it stands for, is that the department, you know, because the act doesn't prohibit the department from having an agency, you know, a full-blown adjudicative proceeding and decision, then it's not unconstitutional. Well, then why doesn't that help you?  Right. Right. The problem, though, with that analysis, it seems to me that I don't think that that really comports with agency law principles because, generally speaking, agencies only have the powers that they're given. So to say that you have the power unless it's prohibited seems Well, let me try to answer your question, see if I understand it. It seems to me that you don't like the East St. Louis case because it presumes that there's some due process component that needs to be given, whereas you just told me there is none under the act. Isn't that your position? Well, actually, no, that wasn't our position, although there's a good point to that. But, again, if there were, for example, in the department context, you know, there would be, as we say in the brief, there would be certiorari available, even though the administrative review law isn't available. So there would be, if there were a decision that had legal effect, then certiorari would be available. I mean, that's a general principle under Illinois law. But, again, because there is no adjudicative decision here, there's no legal effect to departments' investigative findings, even at the very end of this five-step process, you know, within the department. Again, all they do is investigate. They do not adjudicate liability. They do not adjudicate rights. They don't find facts. There are no presumptions based upon their investigation that the court has to consider. There's no deference into the fact that it's already taken place in the investigation. No, there is not. Strictly, they know though. I realize that this is very hard. This is hard for me to grasp. You know, when I was doing BART law, I have to say, because it goes against every notion we have of how agencies work. But, again, you're right. There is no legal effect to this, to even the end result of the department's investigation. How do I know this to be the case? I mean, I know you're representing it to me in good faith. Is it by the regulations or where? Where does it come from? I don't read that in the statute. Well, you have to infer from the statute, in part, because there's, well, a couple of answers to that question, if I may. Just very briefly. Right. Because the administrative review law isn't there, and because there's no, the department isn't authorized to give a final adjudicative determination, that's one answer. And the other answer is when you look at how the act plus its regulations work, you see that there's sort of an increasing levels of investigation. And then, finally, you get a department, you know, assessing fines and so on, but only, and then there has to be voluntary compliance. You know, the rules say this in 510, 245.10. And so if there's voluntary compliance, you know, there's some sort of settlement, then everybody, you know, goes away happy. If there's not, that's when you get to the adjudicative phase. And then the attorney general's office does or does not have, you know, go forward with an action in which the department's investigative findings have no preclusive effect, although surely the underlying evidence that supports those would be admitted. Okay. Right. So thank you. For these reasons, we ask you to reverse. Mr. Tye. I'd just like to start with kind of the nuts and bolts part of it. This is a preliminary injunction, reviews of use of discretion, and I would submit to your honors that, you know, when the trial court was faced with facts which were, in his words, materially indistinguishable from those of Bartlow, and with Bartlow saying what it did, I don't believe you can say that the trial court approved it. Yeah, but counsel, that's kind of a twisted argument in the sense that the trial court, if it found Bartlow applicable, needed to follow it. We don't. That's true. So that means the point I'm making is I'm not sure the trial court felt it had any exercise or any discretion to exercise. Well, that leads me into my next one. So go ahead with that. To respond to the merits of the department's arguments. As I put in my brief, I would be fine if the statute actually said that nothing we do matters and it has to be a brand-new de novo trial where we have to actually call these witnesses. Pausing right there. That's clearly the argument Ms. Welch has now made. Yes. So what if this court were to say, reversed and remanded, because the attorney general has conceded, has asserted, nothing counts, and we accept it and agree with that, you're a happy guy? If that happened, I'd tell my client, absolutely ignore those letters, don't talk to them, don't give them any evidence that can incriminate yourself, and let them try to bring a brand-new de novo trial, and two years later we'll get it in front of the jury. Well, how does this work, by the way? I tried to think of a comparison. I came up with one about an investigation by the police, and the police contact your client and they say, you know, we're investigating you to think about some consumer fraud or criminal something or other. Most lawyers would say keep your mouth shut, don't talk to the police at all, and whatever the police investigation is doesn't matter until such time as they turn it over to the state's attorney, charges are filed, and then now you're in court, then you have various due process protections, et cetera. I specifically asked Ms. Wells if that's an appropriate analogy, and she says yes. What do you think? I don't think you can get there from here. I've read the statute. I know you all have read the statute. It just doesn't say what she says. But you're a happy guy if you can? If I could, yes, but I just don't see how you get there from here. It just doesn't say what she says. Well, you know, this is a strange situation. The department, what is that, you know, shouldn't they be given some deference if there's ambiguity in the statute and how they want to interpret it? Why shouldn't we accept their interpretation that says this is just an investigation that doesn't matter, and, in fact, she's right, is she not? If that's the case, there are no due process implications, and Bartlow would be wrong. Well, if your honors think you can look at that statute and actually get to that point from what the words actually say, I'm not going to tell you not to do it. I can't do it. But it's just like the police. You have no due process concerns. That's right, but I'm just saying that when you read this actual statute, that's not what it does, and I'm sure that's not what it was meant to do. If the courts want to interpret things into it that aren't fair, to make it constitutional, I suppose that's your problem. Well, what do you think the statute was meant to do? It was meant to make it as easy as possible for the department to go after employers who were more competitive than other employers because they were using them as independent contractors instead of employees. In the state's brief, they've got some of the legislative history where that was their concern. They said, we don't like the fact that some employers, some contractors are getting a competitive advantage, and so we're going to stop it. If you look at the letter that my client got, it said preliminary finding, but basically it said we found you guilty. Here's what our sentence is going to be. If you'd like, you can submit something in writing that we'll consider, but regardless, we're going to pass judgment in 30 days. Ms. Moe says that's no more significant than the cop saying we think you're guilty. Well, she says that. I don't think the statute says that. Well, I read Section 80. I think that's what she describes as being the basis of this interpretation. It's not crystal clear to me either, but it seems to me that that's a reasonable, perhaps not mine, but an interpretation could be made. But you're happy with it? Like I said, if you can get there from here, that's fine. So you would be happy with the interpretation. She is suggesting that interpretation. Why shouldn't we go along with it? Well, again, I just don't see how you get there from here. It just doesn't say that. I also raised the issue in my brief. This argument about it's all de novo was something that I did not get from reading Bartlow. Maybe they made that argument to the Bartlow court and the Bartlow court didn't address it or gave it short attention. But that was something new to me that came up in this case, and I thought that was kind of interesting. So I actually looked it up, and what I found was a case that says when a statute causes completely de novo review with the judge, then that violates the separation of powers because you're giving the executive functions to the court. So that's another hurdle you have to get over. How do you get past that hurdle? Well, I don't think we need to raise that to a spot that it's at least an arguable point and she responded to it in saying it's not really, Sveta. It seems to me that if everyone likes the interpretation being proposed, if we accept it, we can wait for some other case to say, oh, that's not constitutional. I mean, after all, surely a constitutional argument would have to be made and briefed. I don't think we should so as far as to make it. Well, that's fine, and at this point in the proceedings, I don't know that you need to because it's the preliminary injunction that the trial court abuses discretion. You could reverse the preliminary injunction and send it back, and then we'll just have a hearing on the merits. I don't think you should, and this will get to my final point. The state put in their appendix the trial court order where he discussed that. I think it was East St. Louis something. And I read that case, and trust me, I've looked very hard to try to find a way around that, but I think the trial court was right. I think the statute, the way it's written, doesn't provide due process, but there's nothing that would stop the department from providing process if they wanted to. So it has to be, it has applied challenges of a facial challenge. Now, in Bartlow, back at the trial court, everybody agreed it's a facial challenge. I don't agree that it's a facial challenge. When we get back to the trial court, my position will be that this is an as-applied challenge. So you think East St. Louis would apply? I do. I think the trial court was right. Assuming there's any due process implications at all. Yes. I believe in his order he said that a fair reading of the statute doesn't support the department's interpretation and that there are no hearings provided, but it has to be a facial challenge. But if it's all just, everything's going to be de novo after that, if you tell them to go jump, you've got no due process concerns. Yes, if the statute actually said that, that none of this matters and it's all de novo. Well, this is, as I say, a little bit strange. Let me ask you the question directly, and I'll ask as well. Given her position, why shouldn't we say, hey, the department wants the statute to say that, arguably could say it, we'll give some deference to their construction of it, it says it. Why shouldn't we do that? You shouldn't do that because what's going to happen is, then in the fourth district for a while that's going to be the law. People are going to rely on that. And then in another district it's going to come up, and eventually it's going to get to the Supreme Court. And I don't think the Supreme Court's going to go along with that. You mean they won't accept the department's representations? I don't think so. But I could be wrong. But the point is that I think you should try to get it right and make sure that we don't end up with these district splits where people are relying on things that maybe aren't necessarily right. I'd rather have it done right, finished first time. That's an interesting concept. I don't have any other points unless Your Honor has a question. Seeing none, we'll have rebuttal. Quite briefly, I think just two points. With regard to the separation of powers argument, the statutory scheme in Millennium Maintenance, well first the Appellee's Brief was the first time this argument came up in this litigation. It wasn't presented to the Circuit Court. So I think that the waiver certainly applies to that. And upon remand, the plaintiff could develop that argument. But also, even if the Court considers it, Millennium Maintenance statutory scheme was quite different. There was a difference between legislative act and executive act. The legislative act of approving a variance or permit and the adjudicative act of denying a permit. And so that's not what's going on here. There's no legislative acts here. And there's not even an enforceable executive act. There's adjudicative executive act. There's just an investigatory executive act. Am I correct, Counsel, that in my identification of Section 80 as being the one that you view as the primary statutory basis for your argument that everything would be de novo post-investigation? Right. That plus the rule that says that if there's no voluntary compliance, then you have to refer it to the Attorney General's Office for enforcement. And it would be highly unusual if the Department could go into the Circuit Court as the plaintiff and not have the burden of proof. And, again, I recommend strongly for the courts to, you know, go back and look at Recchi, look at Miller. You think that's what happened in those contexts? At Walters, yes. Because, again, the statutory scheme, it's the same Department and the statutory scheme is so similar. It's really investigation. Has the Department written any regs that would help clarify that this is, again, doesn't have any lingering effect beyond. And, again, I use this metaphor, and I want to make sure you're in agreement with it. Your role is like the police, and as we all know here, police investigations don't account for anything. Correct. It's when the matter's with the state's attorney and then charges, that's when things get serious. Yes, yes. And, again, you know, all the evidence the police collect can be brought, you know, can be tried to, you know, be presented to the court. Again, that's true. But, again, I think that the closest analogy is the Wage Act and, you know, the various appellate decisions that have construed it and its effect, that it doesn't have an adjudicatory effect. It doesn't have a legal effect. It's a nonjudicial proceeding. Its results are not preclusive. Let me ask you the same question I asked Mr. Tye. Given your argument and your position and what he says, is there any reason why we shouldn't say that the act means what you said it means, that this is all just an investigation? That's what you want? Yes. Mr. Tye said that if you're right, he just tells clients to don't respond to questions, just sit tight and respond to the attorney general if they file a complaint, and then we'll take it to a jury. Are you saying they would have a right to a jury trial? This I don't know. I mean, the statute doesn't speak to that. I haven't investigated. Normally you don't have a right to a jury trial under a statutory claim unless the statute says so. That's my understanding, and so I would not. But there would be a fact line. When you respond to Justice Steinman saying you basically assume the role of the police, the police don't assess penalties. You're assessing penalties. What about the police? You're notifying of the penalties. Of the potential liability. Of the potential liability. Let me ask you this then. If you send the notice, if, as Mr. Tye said his client might do, don't respond, do you continue until you wait for that trial two years later to say that there's a penalty increased on a daily basis so that they're subject to maybe double the penalty that the original notice said? This I don't know. I mean, does the statute provide for a daily penalty? It does. It does. And so, and I don't, but it applies, it requires, or it allows a maximum daily penalty. So it doesn't have a minimum. If it took two years for the AG to file and get it to court, the penalty could be far, far higher than the original notice indicated. The maximum penalty could be far higher. But again, and this is one of the reasons that the departments, you know, sends out these notices of preliminary findings and says, look, we think as they did for plaintiff, here are five guys. They're always guys. You know, here are five guys. You have, they've worked for you for six days each. They appear to be employees under the criteria. Therefore, six guys, six days, this is the, you could be assessed this maximum penalty. And so what happens during the investigatory phase is that they say, come in. Let's talk. Maybe you had no idea. Maybe they were lying to you. Maybe this. Maybe that. Let's settle. This is the maximum penalty that you could be assessed. And usually it's for a project. So there is a consequence to the department's actions. No. They can say no. We don't want to settle. If they say something incriminatory, would you use that against them? Well, I think any admission they made would be yes. Two last questions. It would be usable. I take it you heard Mr. Tyree's briefly some insular and potential constitutional problems. I take it you've considered that. The separation of powers. And you think it's, there's no constitutional problem. Well, no. As I said, he was talking about malevolent maintenance and so on. And that was a completely different statutory scheme. It was a denial of a permit, which was an adjudication. You don't see a constitutional problem if we accept your argument. Oh, no. Because, again, there's no adjudication here. And the second thing is, I suppose with regard to the discussion, this would be kind of like a station adjustment for a lesser offense. Yes, I suppose. If you do public service work, we won't refer the charges up. Right. Or if you promise not to do it again, or so on. Right. I mean, all of this, you know, get out of here and don't let me see you again. Something like that. Okay. Thanks to both of you. Case is submitted. Court stands in recess.